UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

GARRY SHLYONSKY and MELINA
SHLYONSKY, individually and on behalf of all
others similarly situated,

               Plaintiffs

V.

HIRISE ENGINEERING, P.C., MATTHEW
PAPPALARDO, UNITED TECHNICAL
CONSULTANTS, L.L.C., GLENN GROGAN, ALL
SEASONS ADJUSTING, INC., RICHARD
CROWLEY, and TRAVELERS INSURANCE
COMPANY, doing business as THE STANDARD
FIRE INSURANCE COMPANY,

               Defendants.
----------------------------------------------------------X

**No.** _____

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

Plaintiffs Garry Shlyonsky and Melina Shlyonsky ("Plaintiffs" or "the Shlyonskys"),

by their attorneys, bring this individual and class action complaint pursuant to Federal Rule

of Civil Procedure 23 against Defendants HiRise Engineering, P.C. ("HiRise"), Matthew

Pappalardo ("Pappalardo"), United Technical Consultants, L.L.C. ("United"), Glenn Grogan

("Grogan"), ALL Seasons Adjusting, Inc. ("ALL Seasons"), Richard Crowley ("Crowley"),

and Travelers Insurance Company, doing business as The Standard Fire Insurance Company

("Travelers") (collectively "Defendants") for violations of RICO, 18 U.S.C. §1962(c).

Plaintiffs allege the following upon information and belief, except as to those paragraphs

pertaining to Plaintiffs' own actions, which are alleged upon personal knowledge. Plaintiffs

believe that substantial additional evidentiary support will exist for the allegations set forth

herein after a reasonable opportunity for discovery:

## NATURE OF ACTION

1. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and on behalf of a class (the "Class") of similarly situated entities and individuals (the "Class Members") whose claim was denied in whole or in part based upon an engineering report that was altered by HiRise after the inspecting engineer's report was submitted to HiRise.

2. This case involves a scheme whereby HiRise altered or manipulated engineering reports relied on to process insurance payments under the National Flood Insurance Program ("NFIP"). By altering the reports as described below, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers benefitted from denial or underpayment of insurance claims. If claims were denied or underpaid, HiRise, Pappalardo, United, Grogan, ALL Seasons and Crowley were able to incite and/or extend litigation and continue receiving assignments from Travelers. This allowed HiRise, United, ALL Seasons, and others to reap the benefit of unnecessary claims handling and litigation expenses. As more fully described below, Travelers participated in the scheme so that it could justify denying or underpaying claims. By denying or underpaying claims, Travelers avoided being audited by FEMA and potentially having to reimburse FEMA for prior payments received and also received additional unwarranted payments from FEMA for administering the WYO program.

3. Based on information and belief, Travelers denied Plaintiffs' insurance claim and denied or underpaid the claims of Class Members based upon fraudulently altered reports issued by HiRise. Travelers had knowledge of the fraud at the time the fraud was committed. In the alternative, Travelers was "willfully blind" or engaged in "conscious avoidance" regarding

the illegal and fraudulent actions of HiRise; therefore, Travelers is liable for the scheme and for damages suffered by Plaintiffs and Class Members.

4. Defendants ALL Seasons and Crowley blindly accepted the fraudulent conclusions touted by HiRise, United, Grogan, and Pappalardo. Crowley conducted an inspection of Plaintiffs' property and observed the extensive damage to the home. Despite this knowledge, Crowley refused to authorize payment of the full policy benefit which the Shlyonskys purchased. He did this in conjunction with his employer ALL Seasons to satisfy the desire of Travelers to reduce payments on covered losses. Crowley and ALL Seasons knew that if they did not work in concert with Travelers and its engineer consultants to diminish insurance claims that ALL Seasons and Crowley would not receive additional or future claims assignments from Travelers.

5. Plaintiffs and others similarly situated had valid insurance claims denied in whole or in part based on this scheme. Plaintiffs were deprived of thousands of dollars in insurance proceeds as a result of the Defendants' unlawful scheme. HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers used mail, telephone, facsimile, and/or email to transact the scheme.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§1961, 1962, 1964, 28 U.S.C. §§1331 and 1367. The Court has personal jurisdiction over Defendants pursuant to 18 U. S. C. §1965 (a) (b) and (d) as Defendants transacted their affairs in this district and ends of justice require Defendants be brought before this Court.

7. This Court is a proper venue for this action pursuant to 18 U.S.C. §1965 (a) and 28 U.S.C. §1391 (b) (2). Venue is proper in this judicial district because it is where a substantial part of the events at issue took place.

## PARTIES

8. Plaintiffs are individuals who reside in this district. Plaintiffs owned real property located at 229 Exeter Street, Brooklyn, New York.

9. Defendant HiRise Engineering, P.C. is a professional corporation that is incorporated under the laws of the State of New York and with its principal place of business in Uniondale, New York. HiRise participated in the scheme to defraud as more fully described herein and is liable to Plaintiffs for the damage suffered by Plaintiffs.

10. Defendant Matthew Pappalardo is an individual and a citizen of the State of New Jersey. Defendant Pappalardo worked for Defendant HiRise and participated in the scheme to defraud as more fully described below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

11. Defendant United Technical Consultants, L.L.C. is a limited liability company incorporated under the laws of the State of Pennsylvania and with its principal place of business in Malvern, Pennsylvania. Defendant United is an investigative engineering firm which participated in the scheme to defraud as described herein and below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

12. Defendant Glenn Grogan is an individual and a citizen of the State of Pennsylvania. Defendant Grogan worked for Defendant United and participated in the scheme to defraud

as more fully described below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

13. Defendant ALL Seasons is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Downingtown, Pennsylvania. Defendant ALL Seasons is an adjusting firm that participated in the scheme to defraud as described herein and below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

14. Defendant Richard Crowley is an individual adjuster. He resides in Sayreville, New Jersey. Crowley participated in the scheme to defraud as more fully described below, and is liable to Plaintiffs for the damage suffered by Plaintiffs.

15. Defendant Travelers was and is a private insurance company incorporated under the laws of the State of Florida. Travelers is a "Write Your Own" ("WYO") carrier participating in the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act ("NFIA"), as amended 42 U.S.C. §4001, et seq. Travelers issued Standard Flood Insurance Policies (the "Policies") in its own name, as a fiscal agent of the United States, administering federal funds. Pursuant to 44 C.F.R. §62.23(d) and (i)(6), Travelers was and is responsible for arranging the adjustment, settlement, payment, and defense of all claims arising under the Policies. Under 44 C.F.R. §62, Appendix A, the federal government reimburses Travelers for fees and expenses incurred in the defense of litigated claims.

16. As more fully described below, after Hurricane Sandy, Travelers assigned ALL Seasons and Crowley to adjust Plaintiffs' claim. Crowley observed extensive damage to Plaintiffs' home. Travelers retained United and Grogan, who in turn retained HiRise to perform an engineering analysis of Plaintiffs' property. HiRise, in turn, assigned an experienced and

well-respected engineer, Harold Weinberg, to inspect Plaintiffs' house for damage and write a report of his findings. When HiRise received the report from Weinberg that determined Plaintiffs' house was extensively damaged by Hurricane Sandy, HiRise and Pappalardo fraudulently altered the report. The altered report was used by the flood insurance carrier, Travelers, as an artifice to deny Plaintiffs' legitimate claim for insurance benefits.

17. HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley know that Travelers garners economic benefit from the unwarranted denial of NFIP claims and Travelers will in turn continue employing HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley and pay them unwarranted consulting fees for their engineering and claims handling work. HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley know that the money they receive for their services comes from funds administered pursuant to the NFIP.

18. As fully described below, Travelers participated in the scheme to wrongfully and illegally deny Plaintiffs' claim, and the claims of Class Members. Based on FEMA's methods for reimbursing WYO carriers for the costs associated with administering the WYO program, Travelers profits by systematically increasing claim handling expenses, including amounts paid to HiRise and ALL Seasons. An unintended consequence of the WYO reimbursement protocol is that the more expenses Travelers can attribute to claims handling, the more money it will receive from FEMA and the NFIP for administering the program. A 2009 report of the U.S. Government Accountability Office ("GAO") found that WYO carriers received reimbursement for expenses above the amount actually incurred. Travelers and its claims handling consultants, such as HiRise, Pappalardo, United, Grogan, ALL Seasons and

Crowley collectively stood to benefit from increasing expenses and passing them along to FEMA for reimbursement.

19. Further, Travelers knows that it may be responsible if a claim is overpaid. Travelers risks an audit by FEMA and/or other governmental entities if amounts paid out exceed an expected threshold. Therefore, Travelers systematically sought to underpay legitimate claims and either knowingly or with willful blindness accepted the fraudulent engineering and claims handling analysis touted by HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley and blindly accepted by ALL Seasons and Crowley for their mutual benefit.

20. Based on information and belief, as more fully outlined below, ALL Seasons and Crowley refused to recommend full payment of claims, even when it was obvious that liability was clear. HiRise and Pappalardo altered and rewrote the reports that were provided to the flood carriers so Travelers could deny, in whole or in part, Plaintiffs' claim and the claims of others similarly situated. This scheme was used to deny Plaintiffs' claim and the legitimate claims of numerous Class Members.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

21. On October 29, 2012, Hurricane Sandy ("Sandy") hit New York and surrounding areas, causing severe damage to homes and businesses. Plaintiffs' house located at 229 Exeter Street, Brooklyn New York (the "Property") suffered a direct hit from Hurricane Sandy's storm surge and flood water. Plaintiffs made a claim with their flood insurance carrier, Travelers. Travelers hired ALL Seasons and adjuster David Crowley to inspect Plaintiffs' property and document the claim.

22. Crowley inspected the home and observed first-hand the extensive flood damage to the Shlyonskys' home caused by Sandy. However, instead of recommending that the home be deemed a total loss and the full policy benefit paid to the Shlyonskys, Crowley issued an estimate for approximately $75,000.[1]

23. Travelers and/or ALL Seasons assigned a portion of the claim to Defendant United and Defendant Grogan. Defendants United and/or Grogan in turn assigned the claim to Defendant HiRise to conduct an engineering inspection of the Property to determine the nature and extent of the damages.

24. HiRise assigned Harold Weinberg, a highly regarded and well respected New York State licensed Professional Engineer, to conduct the engineering analysis and write a report. On January 13, 2013, Weinberg inspected the Shlyonskys' damaged home. Following his inspection, Weinberg wrote a report dated January 31, 2013, in which he concludes "…the flood waters caused damage to the inside of the building in the cellar …The damage at the lower part of the building was caused by flooding and is responsible for about 100% in total…The entire cellar including the slab finishes and the foundation wall finishes were damaged extensively …No major damage existed prior to storm Sandy to the building proper."[2]  Weinberg affixed his wet-ink seal of his New York State engineer license[3] and submitted the report to HiRise for issuance to Travelers and the Shlyonskys.

25. On March 11, 2013, Defendants HiRise and Pappalardo altered Weinberg's professional report by removing the findings and observations cited above and adding opposite

---

[1] *See* Plaintiffs' Exhibit 1 – Crowley's February 23, 2013 estimate.
[2] *See* Plaintiffs' Exhibit 2 – Weinberg's January 31, 2013 true report.
[3] *Id.*

conclusions.[4]  The altered report wrongfully concluded that the damage to the Shlyonskys' home was pre-existing and not caused by Sandy.[5]  HiRise then affixed Weinberg's professional seal to the altered report and falsified conclusions.[6]  Upon information and belief, the alterations to the report were never shown to or approved by Weinberg prior to affixing his professional seal and Weinberg did not give HiRise authority to alter his January 31st report.  After altering the report, HiRise and Pappalardo submitted the report to Defendants United and Grogan, who in turn, provided the altered report to Travelers.[7]  Travelers used the fraudulently altered report as a basis to deny the vast majority of the Shlyonskys' claim.

26. A fraud was perpetrated on Plaintiffs.  Plaintiffs were entitled to collect the full $250,000 proceeds for the damage to their home, but instead, they were only paid approximately $75,000 based on the altered report.

27. Upon receipt of the March 11th report and denial of their claim, the Shlyonskys' were stunned by the opposite conclusions reached in the altered report.  The Shlyonskys contacted Weinberg to obtain his report. Weinberg forwarded the Shlyonskys a copy of his January 31st report, clearly indicating that Weinberg never knew his report was changed after he submitted the report to HiRise.

28. When comparing the January 31st and March 11th reports, it is important to note that not only did the conclusions change but the ***facts supporting the conclusions*** changed despite

---

[4] *See* Plaintiffs' Exhibit 3 – March 11, 2013 report altered by HiRise and Pappalardo.
[5] *Id.*
[6] *Id.*; *see also* Plaintiffs' Exhibit 4 – Comparison of Signatures from January 31st and March 11th reports.
[7] *See* Plaintiffs' Exhibit 2.

no additional information and no subsequent inspection performed by HiRise and/or Pappalardo.

29. Tellingly, Pappalardo's alteration of the report ***removes*** key evidence which supports the initial conclusion that the Shlyonskys' home was significantly damaged by Sandy and had no pre-existing damage. Manipulating the engineering observations was done under the guise of a "review" as indicated by Pappalardo's signature on the March 11th report.[8] Pappalardo removed key evidence to support his contradictory conclusion. Specifically, the reports differ as follows:

| True Report (Exhibit 2) | Altered Report (Exhibit 3) |
| --- | --- |
| 1. During my examination, I examined all the exterior walls and the interior walls of the cellar space. The limestone walls had cracks at various locations. In addition, the flood waters caused damage to the inside of the building in the cellar. | 1. During my examination, I examined all the exterior walls and the interior walls of the cellar space. Flood waters caused damage to the inside finishes of the building in the cellar. |
| 2. Stairs leading to the first floor and the cellar suffered cracking. Steps were cracked in several places. | 2. Spacing between the exterior stairs leading to the first floor and the cellar was noted between the treads and risers and the EIFS facades. |
| 3. An examination of the exterior water line was made and I determined that the water was at least 36" above the adjacent grade. The damage at the lower part of the building was caused by flooding and is responsible for about 100% in total. The lowest level of the structure is a cellar. The structural system of the foundation walls are masonry block on footings. The entire cellar including the slab finishes and the foundation wall finishes were damaged extensively. | 3. An examination of the exterior water line was made and I determined that the water was at least 36" above the adjacent grade. The lowest level of the structure is a cellar. The structural system of the foundation walls are masonry block on footings. All observable structural components were free from defect. |
| 4. I observed that the interior finish of the building that the water level line was also at least 7' high in the cellar. At the time of my visit some rehabilitation had taken place. | 4. No flood-related structural damage to the building was found. Damages were limited only to finish materials such as drywall and flooring which were caused by saturation during the flooding. The water level line was |

---

[8] *Id.*

10

| | |
|---|---|
| The exterior walls suffered slight displacement of the limestone in several locations. It may be necessary to remove and reset the tiles in place. Prior existing damages may have been absorbed with the damages caused by Sandy. This building was erected circa 1930. Therefore, it is 83 years in existence | at least 7' high in the cellar. Observation of all structural components of the dwelling revealed no damage. |
| 5. No major damage existed prior to storm Sandy to the building proper. | 5. Spacing between the stone staircases and EIFS facades were pre-existing. There was no evidence to support that damage was caused by flooding. |

30. When the altered report was received by ALL Seasons and Crowley, they willfully ignored the fact that the report contradicted the facts observed first-hand by Crowley and made known to ALL Seasons. ALL Seasons and Crowley blindly accepted the fraudulent and outcome oriented HiRise report because ALL Seasons and Crowley knew this was the result desired by Travelers. To contradict Travelers would jeopardize continued and future business and revenue.

31. The altered conclusions used by Defendants to undermine Plaintiffs' claim for insurance benefits were not the result of sound engineering methodology. The conclusions were "reviewed" and reversed by an individual who is not even an engineer! HiRise and Pappalardo had pre-determined conclusions and manipulated the facts of Plaintiffs' case to fit those conclusions.

32. Magistrate Judge Gary Brown took numerous issues with a similar process which he dubbed "reprehensible" and "flawed."[9] In a separate matter, Judge Brown's scathing order finds:

> [T]he evidence adduced in this matter demonstrates that U.S. Forensic, an engineering firm retained by defendant Wright National Flood Insurance

---

[9] *See* Plaintiffs' Exhibit 5 - Judge Brown's November 7, 2014 memorandum and order at 2-3. This memorandum and order was issued in Cause No. 1:14-mc-00041-CLP-GRB-RER, *In re Hurricane Sandy Cases, see* DE [637] and Cause No. 2:14-cv-00461-JFB-SIL, *Raimey v. Wright Flood Insurance Company*, *see* DE [82].

Company to examine a storm-battered house in Long Beach, New York, unfairly thwarted reasoned consideration of [Ramey and Raisfeld's] claim through the issuance of a baseless report. The engineer sent by U.S. Forensic opined in a written report that the home at issue had been damaged beyond repair by Hurricane Sandy. A second engineer, who did little more than review the photographs taken by the inspecting engineer, secretly rewrote the report, reversing its conclusion to indicate that the house had not been damaged by the storm, and attributing—without sufficient evidence—defects in the home to long-term deterioration. This process, euphemistically dubbed a "peer review" by U.S. Forensic, was concealed by design from the homeowners, remained uncovered during the Court-assisted discovery process and came to light through near happenstance. In a misguided attempt to defend these flawed practices, [Wright National Flood Insurance Company] has elicited evidence that this "peer review" process may have affected hundreds of Hurricane Sandy flood insurance claims—and possibly more.[10]

33. Similarly here, the Shlyonskys' report was "reviewed" by Pappalardo (not an engineer), who never inspected the Property and secretly rewrote the report, revising its conclusion to indicate that the house was not damaged by Sandy, and concluded – without sufficient evidence – that the damage to the home was pre-existing. This review process was concealed by design from the Shlyonskys until they contacted Weinberg directly.

34. Upon information and belief, the unlawful scheme perpetrated by Defendants is not an isolated event but an ongoing criminal organization. The fraudulent reports, fraudulent payments, and fraudulent reasons for denying Plaintiffs' and Class Members' claims were provided to victims through mail or wire transfer. Each of these denials and payments is a separate predicate act of racketeering activity occurring within the last 10 years.

### *Liability of HiRise and Pappalardo*

35. In conspiracy with the other Defendants, HiRise and Pappalardo altered the January 31st engineering report submitted by Weinberg. Defendants HiRise and Pappalardo altered the report with the specific intent to defraud Plaintiffs of their legal benefits under the contract

---

[10] *Id.* at 2-3 (emphasis added).

with Travelers. HiRise and Pappalardo used the mail, telephone, and/or email to perpetrate the fraud. Based on information and belief, a similar fraud has been perpetrated by HiRise and Pappalardo on other Class Members.

*Liability of Travelers, ALL Seasons, and Crowley*

36. Travelers, ALL Seasons, and Crowley knew or were willfully blind to the fact that HiRise and Pappalardo were fraudulently altering engineering reports to deny legitimate claims. In many instances, including Plaintiffs' claim, the engineering report directly contradicted facts observed by adjusters like Crowley.

37. Defendant Travelers retained Defendants ALL Seasons and Crowley to perform adjusting services. Upon inspection of the Property, Crowley observed the extensive damage to the home first-hand. The engineering conclusions touted by HiRise, Pappalardo, United, and Grogan directly contradicted facts observed by Crowley and made known to ALL Seasons.

38. Travelers, ALL Seasons, and Crowley directed and/or participated in the fraud on Plaintiffs, and Travelers, ALL Seasons, and Crowley directed and/or participated in the commission of the mail and/or wire fraud. Despite the fact that Travelers, ALL Seasons, and Crowley knew or should have known of the alteration of the engineering report, Travelers used the falsified report as an excuse to deny Plaintiffs' claim for benefits.

39. Travelers', ALL Seasons', and Crowley's failure to investigate the facially inaccurate engineering report after having the above knowledge constitutes "willful blindness" to the illegal and fraudulent actions of HiRise and Pappalardo; therefore, Travelers, ALL Seasons, and Crowley are liable under the doctrine of conscious avoidance.

40. The doctrine of conscious avoidance stands for the principle that a person who deliberately shuts his eyes to an obvious means of knowledge has sufficient *mens rea* for the "knowing" element of a criminal offense.[11] Even in a conspiracy case in which specific intent must be proven, such as mail fraud cases, conscious avoidance is sufficient to establish *mens rea*.[12]

41. Travelers stands to benefit from this fraudulent scheme both directly and indirectly. Based on information and belief, due to the way in which the WYO program is funded by FEMA, Travelers actually reaps greater profit by driving up claims handling expenses and denying legitimate claims. Further, Travelers avoids the threat of a government audit by reducing the amount paid on claims, even if legitimate. Travelers is highly motivated to avoid an audit. In 2009, the GAO audited other WYO carriers and determined that they had significantly overbilled FEMA for administering the WYO program. Travelers is motivated by the desire to keep their ill-gotten gains by driving up claims handling expenses while reducing the amount paid on claims. Travelers acted in concert with HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley to achieve this unlawful purpose.

42. ALL Seasons and Crowley also stand to benefit from this fraudulent scheme. The more ALL Seasons and Crowley contribute to Travelers' inflated expenses, the easier it is for ALL Seasons and Crowley to ensure future assignments and expense payments from Travelers.

### *Liability of United and Grogan*

43. United and Grogan had knowledge of this conduct and participated in the fraud perpetrated on Plaintiffs. Based on information and belief, a similar fraud has been perpetrated by United and Grogan and the other Defendants on Class Members. Research on Defendant

---

[11] *United States v. Quinones*, 635 F.3d 590, 601 (2d Cir. 2011).
[12] *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989).

Grogan reveals he has a history of engaging in criminal activity.[13]  In situations where United and Grogan may not have had specific knowledge of altered reports, they were aware of this ongoing scheme and are liable under the doctrine of conscious avoidance.

44. United and Grogan stand to benefit from this fraudulent scheme. The more United and Grogan contribute to Travelers' inflated expenses, the easier it is for United and Grogan to ensure future assignments and expense payments from Travelers.

## RICO ALLEGATIONS

### The HiRise Enterprise

45. HiRise is a "person" within the meaning of 18 U.S.C. §1961(3).

46. Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals and entities associated in fact that Plaintiffs refer to as the HiRise Enterprise: (1) HiRise; (2) Pappalardo; (3) United; (4) Grogan; (5) ALL Seasons; (6) Crowley; and (7) Travelers.

47. The HiRise Enterprise is an ongoing organization which engages in, and whose activities affect, interstate commerce. The members of the HiRise Enterprise function as a continuing unit as described below and share the common purpose of creating illegitimate engineering reports to be used to fraudulently deny, in whole or in part, insurance claims for their individual and collective economic gain.

48. While HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers participate in and are members and parts of the HiRise Enterprise, they also have an

---

[13] A LexisNexis report on Mr. Grogan shows that he pled guilty to theft by failing to make required disposition of funds received and violations of Pennsylvania Securities Act – Sales and Purchases. There are several other criminal charges listed against Mr. Grogan with unknown dispositions. Mr. Grogan was an attorney in Pennsylvania, but was disbarred for misconduct.

existence separate and distinct from the enterprise. The common goal was to reduce payments on legitimate insurance claims, drive up costs of claims handling and investigation of these claims. This generated profits for the enterprise as a whole and for participating individuals. Defendant Travelers also benefitted by avoiding a government audit through inflating costs and reducing claims paid.

49. In order to successfully defraud Plaintiffs and Class Members in the manner set forth above, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers needed a system that would allow them to deny insurance claims, in whole or in part, and thereby avoid an audit by FEMA. Additionally, Travelers stood to benefit directly from increasing claims handling expenses due to the manner in which FEMA reimburses WYO carriers for their participation in the NFIP. Due to incentives in the reimbursement program, WYO carriers can actually profit by incurring additional expenses. HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers could spur and prolong litigation so that they could charge and collect unnecessary expense and litigation support service fees and expenses. Travelers participated in the scheme so it could justify denying or underpaying claims; therefore it could avoid an audit by FEMA and having to reimburse FEMA for overpayments.

50. HiRise controls and operates the HiRise Enterprise as follows:

    (a) By falsifying and altering engineering reports in order that the HiRise Enterprise can deny or underpay valid insurance claims;

    (b) By falsifying and altering engineering reports to be utilized to deny or underpay valid insurance claims HiRise, Pappalardo, United, Grogan, ALL Seasons, and Crowley can charge unnecessary and/or inflated litigation costs;

(c) By falsifying and altering engineering reports to be utilized to deny or underpay valid insurance claims, Travelers can avoid being audited by FEMA and can avoid reimbursing FEMA for an overpayment of a claim; and

(d) By falsifying and altering engineering reports to increase claims handling costs, the HiRise Enterprise passes on the expenses to FEMA to justify additional payments to Travelers.

51. As set forth above, the HiRise Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers engage.

**Predicate Acts**

52. Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343 (relating to wire fraud). As set forth below, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have and continue to engage in conduct violating each of these laws to effectuate their scheme.

53. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations, or promises, HiRise, Pappalardo, United, Grogan, Travelers, ALL Seasons, and Crowley, in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to contracts, invoices, correspondence, payments, and altered reports.

54. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers also in violation of 18 U.S.C. §1343, transmitted and received by wire matter and things which include but are not limited to contracts, invoices, correspondence, payments, and altered reports.

55. The matter and things sent by HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers via the Postal Service, commercial carrier, wire or other interstate electronic media include, *inter alia,* altered reports containing false and fraudulent misrepresentations that were utilized by Travelers to improperly deny coverage to or underpay Plaintiffs' claim and claims of members of the class.

56. Other communications sent through or received from the Postal Service, commercial carrier, or interstate wire transmission by HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers included information or communications in furtherance of or necessary to effectuate the scheme.

57. HiRise's, Pappalardo's, United's, Grogan's, Travelers', ALL Seasons', and Crowley's misrepresentations, acts of concealment, and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the Class and for the purpose of denying Plaintiffs' claim and the claims of Class Members. This was done for the purpose of reducing paid claims to avoid an audit which would lead to the detection of improper payments and increased cost of claims handling to the direct financial benefit of Defendants.

58. HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material and would be relied upon by Plaintiffs and Class Members. Plaintiffs and Class Members were defrauded as a result of the misrepresentations and omissions as set forth above. In many instances, the fraud involved tens of thousands of dollars in legitimate insurance claims that were denied.

59. As a result, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have fraudulently obtained engineering and litigation support fees and expenses. These Defendants were able to charge for unwarranted engineering services and other fees based upon their participation in fraudulently denying legitimate insurance claims.

60. Travelers intentionally denied or underpaid insurance claims. By diminishing the amounts paid on claims, Travelers avoided a government audit on payment amounts and on the actual cost of administering the WYO program. Additionally, due to the reverse incentives, Travelers stood to benefit directly from increasing claims handling costs upon which their payments from FEMA were based.

61. Plaintiffs and Class Members have been injured in their business or property by Defendants' overt acts of mail and wire fraud. Plaintiffs' legitimate claim for their entire insurance policy of $250,000 was denied by Travelers based on fraudulent engineering reports which directly reduced the amount paid to approximately $75,000.

### Pattern of Racketeering Activity

62. HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or

aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past ten years. In fact, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have committed multiple acts of racketeering activity. Plaintiffs' and Class Members' claims were fraudulently denied in whole or in part on different dates, proving separate and definable predicate acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted similar victims, including Plaintiffs and Class Members.

63. The multiple acts of racketeering activity which Defendants committed and/or conspired to commit, or aided and abetted acts, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## CLASS ACTION ALLEGATIONS

64. Plaintiffs were the victims of a corrupt and fraudulent criminal enterprise which resulted in deprivation of well over $150,000 in legitimate insurance benefits. Plaintiffs have discovered evidence that other persons similarly situated have been victimized in a similar manner. Plaintiffs have uncovered a fraudulent scheme whereby engineering reports were fraudulently altered to avoid paying legitimate insurance claims.

65. Plaintiffs bring this action against Defendants on their own behalf and, pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, as a class action on behalf of a class of persons similarly situated which include the following:

> **All persons or entities who were insured by Travelers and filed a flood claim between January 1, 2011 through the present and whose claim was denied in whole or in part based upon an engineering report that was altered by HiRise after the inspecting engineer's report was submitted to HiRise for "peer review" or similar purpose.**

66. Excluded from the Class are Defendants, any entity in which one or more of the Defendants has a controlling interest or is a parent or subsidiary of said Defendants, any individual or entity already represented by counsel for these offenses, or any entity that is controlled by one of more of the Defendants and any of their officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

67. Upon information and belief, there are hundreds of members of the Class. Accordingly, the Class is so numerous that joinder of all members is impracticable. The Class is ascertainable, as the names and addresses of all Class Members can be identified in business records maintained by Defendant HiRise, United, and/or Travelers.

68. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other Class Members. Plaintiffs are represented by counsel experienced and competent in the prosecution of complex class action litigation.

69. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. Such common questions include, *inter alia*:

    a.    Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in a scheme to deny legitimate insurance claims;

    b.    Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in a scheme to improperly and unlawfully alter engineering reports;

c.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers are purposefully prolonging litigation for their own financial gain;

d.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in these wrongful acts to avoid audits, thereby causing the denial in whole or in part of Class Members' claims;

e.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in mail and wire fraud;

f.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have engaged in a pattern of racketeering activity;

g.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers constitute an enterprise within the meaning of 18 U.S.C. § 1961(4);

h.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers conducted or participated in the affairs of the HiRise Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) through means including false sworn testimony;

i.      Whether HiRise's, Pappalardo's, United's, Grogan's, ALL Seasons', Crowley's, and Travelers' overt and/or predicate acts in violation of 18 U.S.C. § 1962(c) proximately caused injury to Plaintiffs' and Class Members' business or property; and

j.      Whether HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers fraudulently concealed their scheme.

70. Plaintiffs' claims are typical of the claims of the Class Members because they originate from the same illegal, fraudulent, and confiscatory practices of HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers. HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers acted in the same way toward Plaintiffs and the Class.

71. Plaintiffs will fairly and adequately protect the interests of the Class Members, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class litigation and have no interests antagonistic to or in conflict with those of the Class. As such, Plaintiffs are adequate Class representatives.

72. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the Class.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it impossible for all the Class Members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **VIOLATION OF 18 U.S.C. § 1962(c))**

74. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

75. This claim for relief arises under 18 U.S.C. §1962(c).

76. As set forth above, HiRise, Pappalardo, United, Grogan, ALL Seasons, Crowley, and Travelers have violated 18 U.S.C. §1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the HiRise Enterprise through a pattern of racketeering.

77. As a direct and proximate result, Plaintiffs and Class Members have been injured in their business or property by the predicate acts which make up the defendants' patterns of racketeering activity through the HiRise Enterprise.

78. Specifically, Plaintiffs and Class Members have been injured in their business or property by having their legitimate insurance claims denied in whole or in part as a result of the scheme.

## DAMAGES

79. Plaintiffs were denied their legitimate claim for policy benefits which resulted in a loss exceeding $150,000. The denial of Plaintiffs' claim thwarted Plaintiffs' ability to properly restore their Property. Under 18 U.S.C. §§ 1964(c), Plaintiffs are entitled to treble damages, costs, attorney's fees, and prejudgment interest.

## JURY DEMAND

80. Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and in favor of the Class Members against Defendants as follows:

A. Determining that this action may be maintained as a class action under FED. R. CIV. P. 23(a) and (b);

B. Declaring that Defendants have violated Section 1962(c) of RICO;

C. Ordering Defendants to pay treble the amount of damages suffered by Plaintiffs and the Class as a result of Defendants' violations of Section 1962(c) of RICO;

D. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

E. Awarding prejudgment interest; and

F. Granting such other relief as this Court deems to be just and proper.

DATED: December 5, 2014

Respectfully submitted,

**MOSTYN LAW FIRM**

 */s/ J. Steve Mostyn*
J. Steve Mostyn
JM9387
Texas State Bar No. 00798389
3810 West Alabama Street
Houston, Texas 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)
jsmdocketefile@mostynlaw.com
***Pending Admission Pro Hac Vice***

**DENIS G. KELLY & ASSOCIATES, P.C.**

*/s/ Denis G. Kelly*
Denis G. Kelly
DK7734
New York State Bar No. 2520906
74 West Park Avenue
Long Beach, NY 11561
(516) 897-0800 (Office)
(516) 897-0812 (Facsimile)

**SPEIGHTS & WORRICH LLP**

*/s/ Shawn J. Wallach*
Shawn J. Wallach
shawn@speightsfirm.com
626 RXR Plaza, #6725
Uniondale, NY 11556
(516) 665-0059 (Telephone)
(516) 224-3236 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**